**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,**

v.

**Joy MILLER, Mildred R. Merlino, Defendants.**

**No. C–89–3496 SC.**

United States District Court, N.D. California.

July 19, 1990.

Paul E.B. Glad, Sonnenschein, Nath & Resenthal, San Francisco, Cal., for plaintiff.

Jonathan C. Jackel, Silver & Katz, San Jose, Cal., for defendants.

## AMENDED ORDER RE: MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

This action is brought by plaintiff, Allstate Insurance Company ("Allstate"), for a declaratory judgment that defendant Joy Miller's homeowners insurance policy does not require Allstate to defend or indemnify her in a previously filed lawsuit. The underlying state court litigation concerns misrepresentations allegedly made in the formation of a real estate contract in which Joy Miller sold her condominium residence to Mildred Merlino. Allstate now seeks summary judgment on its claim for declaratory relief.

### BACKGROUND

The complaint filed in state court by Mildred Merlino (the "Merlino Complaint")[1] asserts claims against Miller for:

a) breach of contract;

b) fraudulent misrepresentation;

c) negligent misrepresentation;

d) intentional infliction of emotional distress;

e) negligent infliction of emotional distress;

f) fraudulent failure to disclose;

g) recision;

h) attorneys fees.

The central contentions of the Merlino Complaint are that in February, 1987, Miller contracted with Merlino to sell Miller's condominium. In the contract, Miller represented that she was unaware of any pending lawsuits affecting the property, and that she was unaware of any significant defects in the property. Merlino alleges that, subsequent to her purchase of the condominium, she discovered that Miller's representations were false—that prior to the execution of the real estate contract the condominium association of which Miller was formerly a member had initiated a lawsuit against the construction company which built the complex for shoddy work, and that in fact a number of defects existed in the property.

There is no dispute that while Miller owned the property, she was insured under an Allstate homeowners policy.[2] Upon receiving the Merlino Complaint, Miller tendered it to Allstate. Allstate then brought this action for a declaratory judgment that the homeowners policy issued to Miller provides no coverage for the damages to which she may be exposed and, consequently, that Allstate has no duty to defend or indemnify her in that lawsuit.

The critical portions of the homeowners policy limit coverage to "bodily injury" or "property damage" suffered as a result of an "accidental loss." Under the policy, the terms "bodily injury" mean "bodily injury, sickness or disease, including required care, loss of services and resulting death." The policy defines "property damage" as

---

1. The complaint is entitled *"Mildred R. Merlino v. Jeff Wyatt, Wyatt, Little & Neal, Inc., Joy Miller, and Does 1 through 10, inclusive,"* and was filed on April 1, 1988, in the California Superior Court, Santa Clara County, No. 653281.

2. The effective dates of the policy, March 28, 1985 to November 4, 1987, are also not in dispute.

"physical injury to or destruction of tangible property, including loss of its use." Specific exclusions apply to injuries which befall the insured person or his or her property, or those damages which are the product of an "intentional act" of the insured.[3] It is Allstate's contention that as a matter of law the potential liabilities presented to Miller by the Merlino Complaint do not satisfy the coverage requirements of the homeowners policy.

## DISCUSSION

Summary judgment is proper only when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where, as here, the interpretation of a writing is at the heart of a dispute, the question traditionally is one of law for the court to decide. Schwarzer, "Summary Judgment Under the Federal Rules; Defining Issues of Material Fact," 99 F.R.D. 465, 474–475 (1982).

At the outset, the court notes that Miller does not seriously contest Allstate's contention that no coverage applies to the claims in the Merlino Complaint for breach of contract, fraudulent misrepresentation, intentional infliction of emotional distress, fraudulent failure to disclose, recision and any punitive damages that might arise from the lawsuit. Indeed, the opposition to the motion recognizes, and rightly so, that the arguments against coverage as to these causes of action are compelling.[4] These claims aside, Miller maintains that the possibility of liability as to any of the two remaining claims in the Merlino Complaint—negligent infliction of emotional distress and negligent misrepresentation—represent potential grounds for liability within the limits of the homeowners policy.

As an initial matter, Miller correctly asserts that the duty to defend is broader than the duty to indemnify. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). Any potential liability in the underlying action that arguably comes within the scope of the insurance coverage will engage the insurer's duty to defend. *Id.* Miller, however, improperly construes this holding to mean that an insurer cannot obtain declaratory relief before the underlying action comes to a final adjudication. On the contrary, as the California Supreme Court held in *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 275–277, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), courts must look at the facts alleged in the underlying complaint and make a threshold determination whether any potential liability exists under the policy's coverage. The many cases granting summary judgment in this context after concluding that no coverage ex-

---

3. The policy states:

> Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damages covered by this part of the policy.

And later, in the section enumerating exclusions under the policy, it states;

> 1. We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.

> 2. We do not cover bodily injury to an insured person or property damage to property owned by an insured person.

4. The fraud, breach of contract and intentional infliction of emotional distress counts fall prey to the plain language of the exclusion for intentional acts of the insured. The recision claim is barred as a form of equitable relief incapable of being construed as "bodily injury" or "property damage." Likewise, the claim for fraudulent failure to disclose does not expose Miller to liability for damages to tangible property, but rather only economic loss outside the scope of

isted as a matter of law [5] include a quite recent Appeals Court decision cited by Miller in her opposition. *California Insurance Guarantee Association v. Wood,* 217 Cal.App.3d 944, 266 Cal.Rptr. 250 (1990).

The court concludes that as a matter of law, and for the reasons that follow, the claims for negligent misrepresentation and negligent infliction of emotional distress are not covered by Miller's homeowners policy. The only damages recoverable for negligent misrepresentation are economic or contractual losses outside the meaning of "property damages" under the policy. In addition, the California legislature has carefully restricted the measure of damages available in actions such as the Merlino litigation where there are allegations of misrepresentations in the sale of property. While the cause of action for negligent infliction of emotional distress might otherwise state a claim constituting "bodily injury" under the policy, the controlling legislative restriction on damages in the underlying action has been interpreted to preclude any recovery for emotional distress, whether pleaded as an element of fraud or, as in the Merlino Complaint, as a separate cause of action.

According to the California Supreme Court, in an action for fraud in the sale of real estate, California Civil Code § 3343 is the "exclusive standard of damages." *Stout v. Turney,* 22 Cal.3d 718, 725, 150 Cal.Rptr. 637, 586 P.2d 1228 (1978) [6]. This provision, in essence, limits the purchaser's recovery in the fraudulent transaction to economic loss. Specifically, the Code provides that:

> "[o]ne defrauded in the purchase ... of property is entitled to recover the difference between the actual value of that which the defrauded person parted and the actual value of that which he received, together with any additional damages arising from the transaction. ...

California Civil Code § 3343. Moreover, California defines "fraud" under the Civil Code §§ 1572 and 1710, to include: (a) intentional misrepresentation; (b) *negligent misrepresentation* [7]; (c) the "assertion as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," and; (d) the "suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact. ..." California Civil Code § 1710(2), (3).

In light of the definitions above, it is manifest that the claim for negligent misrepresentation is a claim for fraud controlled by the damage provision regarding those actions. Similarly, the cause of action in the Merlino Complaint for emotional distress involves conduct squarely within the statutory definition of fraud. The relevant portion of the complaint alleges that:

> 39. The conduct of the defendants in negligently failing to ascertain the true facts ... despite plaintiff's reliance on their representations to the contrary, di-

---

the policy as is more fully explained below in the discussion of California Civil Code § 3343.

**5.** This factor distinguishes the cases relied on by Miller for the proposition that courts in these circumstances should abstain until a final judgment has been rendered in the underlying litigation. *Allstate Insurance Company v. Fisher,* 31 Cal.App.3d 391, 107 Cal.Rptr. 251 (1973); *General of America Company v. Lilly,* 258 Cal.App.2d 465, 471–472, 65 Cal.Rptr. 750 (1968). Both cases involved questions of fact—specifically, the question of whether a driver had authorization to use a vehicle—which understandably precluded the court from granting summary judgment where the declaratory relief sought depended on the outcome of a determination of that factual question. Where, as here, the court is asked to decide purely matters of law, no

such concerns apply and summary judgment is appropriately granted where warranted.

**6.** The court in *Stout* noted that exceptions to this rule have been made in cases involving fraudulent fiduciaries. Such an exception is irrelevant to the present inquiry.

**7.** Civil Code § 1572.2 ("Actual Fraud") also states that fraud exists where a person makes "a positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." Indeed, courts have consistently confirmed that negligent misrepresentation represents actual fraud within the statutory definition of that term. *Grenell v. City of Hermosa Beach,* 103 Cal.App.3d 864, 163 Cal.Rptr. 315 (1980); *Clar v. Board of Trade of San Francisco,* 164 Cal.App.2d 636, 331 P.2d 89 (1958).

rectly and proximately caused severe protracted emotional distress to plaintiff....

The court finds that even reading the allegations in the light most favorable to Miller, they must be characterized as at the very least stating a claim for emotional distress based upon either defendants': (a) negligent misrepresentations; (b) assertion as a fact, of that which is not true, when they had no reasonable ground for believing it to be true; or (c) suppression of a fact when defendants were bound to. disclose it. In any case, the conduct giving rise to the emotional distress cause of action constitutes fraud within the statutory definition of that term. As such, any recovery will also be controlled by the special damage provision found in Civil Code § 3343.

The analysis of California Civil Code § 3343 demonstrates that any recovery obtained by Merlino as a result of the fraudulent property transaction will be outside the scope of Miller's policy coverage. As mentioned, the only damages recoverable on the claim for negligent misrepresentation will be economic loss—that is, the difference between the value Merlino paid for the condominium and the value actually received as a result of the fraud. Such damages have repeatedly been held to be outside the plain meaning of the policy which limits recovery to bodily injury and property damage, defined as "physical injury to or destruction of tangible property." *See e.g. Fresno Economy Import Used Cars, Inc. v. United States Fidelity and Guaranty Co., Inc.,* 76 Cal.App.3d 272, 142 Cal.Rptr. 681 (1977) (damages resulting from misrepresentations constitute economic loss and not property damage within the meaning of an analogous policy); *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 893, 145 Cal.Rptr. 836 (1978) ("poor workmanship on the delivered product is not 'property damage' within the terms of the ... liability policy.").

No one contends that the alleged misrepresentations caused physical injury to the condominium itself. On the contrary, the damages available to Merlino for Miller's alleged misrepresentations will represent her loss of value as judged by the purchasing price compared to the property she actually received. This economic loss is simply not within the Allstate policy's coverage of tangible property damage.

Although the path is a bit more circuitous, the same fate that eliminates coverage of the claim for negligent misrepresentation awaits the claim for emotional distress. While the cause of action for negligent infliction of emotional distress might in other circumstances state a claim constituting "bodily injury" under the policy, here, since it springs from fraudulent conduct in the sale of property, it is limited by the controlling legislative restriction on damages found in § 3343 of the Civil. Code. This provision has been consistently interpreted to preclude any recovery for emotional distress arising from the fraudulent conveyance of property. The court in *Oneil v. Spillane,* 45 Cal.App.3d 147, 158–159, 119 Cal.Rptr. 245 (1975), explicitly rejected the argument that mental distress was somehow recoverable under a § 3343. The *Spillane* court commented:

> It is likewise settled beyond dispute that under section 3343 the measure of damages for the fraudulent purchase, sale or exchange of property is the out-of-pocket loss of the defrauded party [citations omitted] *and mental distress is not an element of fraud under that section.* [citations omitted] As emphasized in the cases, the right to recover "additional damages" [under that section] does not refer to the measure of damages but rather to such matters as expenses and other consequential damages stemming from the fraud. (*Bagdasarian v. Gragnon,* 31 Cal.2d 744, 192 P.2d 935 (1948)).

Indeed, many other courts have reached the same conclusion. *Walters v. Marler,* 83 Cal.App.3d 1, 25, 147 Cal.Rptr. 655 (1978); *Channell v. Anthony,* 58 Cal. App.3d 290, 315, 129 Cal.Rptr. 704 (1976) ("mental distress is not an element of damages allowable under Civil Code section 3343"); *Sierra National Bank v. Brown,* 18 Cal.App.3d 98, 103, 95 Cal.Rptr. 742 (1971).

Even when pleaded as an independent cause of action, as in the Merlino Complaint, the claim for emotional distress is barred. In the recent case of *Kruse v. Bank of America*, 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217, (1988), the court held that a plaintiff cannot recover mental distress damages even where a separate cause of action for infliction of emotional distress has been pleaded, where that cause of action arises from the same conduct as a fraud claim. The court, citing *Channell* and *Spillane,* said:

> insofar as the claim for emotional distress is based on the same conduct alleged to show fraud, no recovery is permitted. Emotional distress is not recoverable as an element of fraud. *Id.*

Against this impressive array of statutes and case law, the best Miller could hope to do was establish some confusion as to the state of the law. Unfortunately, her efforts are unpersuasive. More precisely, the court perceives no meaningful inconsistency between the line of precedents holding that mental distress is not recoverable under Civil Code § 3343 and the language originally found in *Oliver v. Benton,* 92 Cal.App.2d 853, 855, 208 P.2d 375, that the "additional damages" clause in that section includes items such as "actual expenditures made by plaintiff, damage to other property, and *personal injuries,* provided they are the proximate result of the misrepresentation."

The portion of the *Oliver* decision which mentions personal injuries within the context of damages under § 3343 is patently dicta. The question of whether personal injuries of any type are compensable under § 3343 was not in any form raised in that case, nor the cases relied on for that proposition.[8] This also holds true for the only subsequent case brought to the court's attention wherein this language is cited. *Sixta v. Ochsner,* 187 Cal.App.2d 485, 491, 9 Cal.Rptr. 617 (1960). There is not a single case cited by plaintiff or discovered by this court wherein personal injury damages have been granted under § 3343. On the other hand, every case to pass on the issue of whether mental distress damages can be recovered under § 3343 has decided the issue against Miller. The court finds it instructive that the legislative amendments to § 3343 since *Oliver* and *Sixta* have elaborated upon the permissible "additional damages" under that section without any mention of the possibility that personal injuries are included. *See for discussion, Stout v. Turney,* 22 Cal.3d 718, 150 Cal. Rptr. 637, 586 P.2d 1228.[9] Rather, the specific items listed as additional damages are strictly economic in nature. *See* California Civil Code § 3343(a)(1)–(4). Moreover, the adoption of a judicial exclusion for mental distress damages under § 3343 in the more recent cases was accomplished without any acknowledgment from the various state appellate courts that there was any contrary authority or, more importantly, that any jurist saw the need to in any manner distinguish *Oliver* or *Sixta.* Obviously, this uniform line of authority for the proposition that emotional distress is not recoverable as an element of fraud under § 3343 is simply not put in any jeopardy by the dated, unnecessary, unrelied upon comment contained in *Oliver.*[10]

As a final matter the court rejects Miller's argument that the doctrine of mutuality bars Allstate from obtaining a declaratory judgment when at the same time, Miller is barred by the insurance contract from seeking similar relief. Plaintiff has provided no support for the proposition that a

---

8. *Bagdasarian v. Gragnon,* 31 Cal.2d 744, 192 P.2d 935; *Jacobs v. Levin,* 58 Cal.App.2d Supp. 913, 917, 137 P.2d 500 (1947)

9. According to *Stout,* during the most recent amendment in 1971, the legislature intended "to incorporate existing case law relating to" the additional damages clause of § 3343. Consequently, the absence of any mention of personal damages in the recent amendments appears all the more conspicuous.

10. In any case, the comment in *Oliver,* particularly in light of its dubious precedential value, is easily harmonized with the modern case law by holding that whatever personal injuries arising as a consequence of fraudulent transaction may be compensable under § 3343, they do not include claims for mental distress.

California court will apply this doctrine in an action for declaratory relief. Absent such precedent, the court is entirely unwilling to ignore the clear expression of the parties intent in this matter as manifested in the unambiguous no-action clause in the policy.

In accordance with the forgoing, the court determines that the Merlino Complaint presents no potential coverage under Miller's homeowners policy and it is hereby ordered that plaintiff's motion for summary judgment in the form of a declaratory judgment that it has no duty to defend or indemnify Miller in that action is GRANTED.